## *In re* Richardson's Estate.

### (2 Misc. Rep. 288.)

*(Surrogate's Court, Westchester County, Filed February, 1893.)*

1. EXECUTORS—WHEN NOT LIABLE AS EXECUTOR DE SON TORT.

An executrix prior to her death placed certain of the funds of the estate in the hands of one who was, after her death, appointed executor. *Held*, that in respect thereto the latter could not be treated as an executor *de son tort* (2 R. S. 81, sec. 60), and that the estate of the executrix was liable to any profits earned by the funds so placed, prior to her death.

2. EXECUTORS—OUTSTANDING ASSETS.

An executor is not obliged to charge himself with the amounts of insurance policies still running, nor with interest on a fund held by a trust company in liquidation, nor with collaterals to loans out of the estate made to himself, as they are not cash in hand or its equivalent, but he should set them forth as outstanding, in schedule G.

3. EXECUTOR—INTEREST ON FUNDS LOANED TO HIMSELF.

An executor is chargeable with profits from the use of money belonging to the estate, as also any bonus he may have received for the loan of the funds, and if such should be less than the legal rate of interest, he is chargeable with the deficiency.

4. SAME—LIABILITY FOR ACTS PRIOR TO APPOINTMENT.

An executor and trustee is liable for dealings with the estate prior to his appointment up to the date when he assumed control of the funds.

5. SAME—COMMISSIONS.

A credit for commissions will be disallowed, as they cannot be taken prior to accounting.

6. SAME—BOOKKEEPER'S CHARGES.

An executor should keep his own accounts when they are simple. and he will not be allowed for bookkeeper's charges, especially when any complexity arose by his own unwarranted dealings with the funds.

7 SAME—REFEREE.

An addendum to the report of a referee, made subsequent to its submission, will be disregarded.

Petition by Anna P. R. Kirkland, a legatee, for the judicial settlement of the accounts of T. C. Richardson, styled in the petition "substituted trustee," who was appointed executor of the estate of Richardson, deceased, in lieu of the widow of deceased, the sole surviving executor and trustee under the will.

The widow died on January 29th, 1890. Prior to her death she had placed certain of the funds of the estate in the hands of T. C. Richardson, her son, who, it was claimed, was chargeable with the profits thereof prior to her death. On June 6th, 1890, T. C. Richardson was appointed substitute trustee and executor. He borrowed moneys of the estate and secured same by collateral. In 1892 an arbitrator, who had been appointed in 1888 to state the account between the executrix and other parties interested, and whose account it was agreed should be final, filed his report bringing the account down to January 29th, 1890, the date of the executrix's death.

After filing the report, the arbitrator filed an addendum thereto relating to a fund held in trust for the petitioner. Other facts appear in the opinion.

Clarke & Culver, for petitioner; W. H. Sloan and F. X. Donoghue, for T. C. Richardson; S. E. Duffy, for Edward C. Richardson, a legatee.

COFFIN, S.—It appears to be conceded that the starting point on this accounting is January 29, 1890, the date to which the referee brought it down. The sums of $3,100 (call loan) and $9,010.14 were placed in the hands of T. C. Richardson by the executrix prior to her death, and her estate is therefore liable for any profits earned by those sums prior to that event. In respect thereto this trustee or executor cannot be treated as an executor *de son tort*. 2 Rev. St. p. 81, section 60. The present executor is here called "substituted trustee," but in the order appointing him he is also styled "executor." It does not seem that there is any trust created by the will, now unexecuted, but

paying over the fund, except, perhaps, as to a portion of Mrs. Kirkland's share.

It is objected that the accounting party should have charged himself with the amounts of the life insurance policies now held by him, and still running, with the amount of the interest of the estate in the fund held in liquidation by the Farmers' Loan & Trust Company, and with certain collaterals to loans made to himself. As they were not cash in hand, or its equivalent, he properly omitted so to charge himself, but he should have set. them forth in Schedule G. When he realizes on them, he may be called upon to render a further account.

The present trustee had no right to borrow money from him- self, as such, to speculate with, and whatever profits he may have realized from the use of the money belongs to the estate,. and he should be charged therewith. Any bonus he may have received for the loan of the fund also belongs to the estate. Of course, if he realized, in his speculations, less than the legal interest, he must be charged with the deficiency.

If T. C. Richardson is to be regarded simply as an executor and trustee, then it would seem his acts and dealings with the estate, from the date of the death of his mother, and prior to his appointment, as a mere common-law trustee, are reviewable here, like those of an executor *de son tort;* the order appointing him relating back to the time when he assumed control of the funds. While this may seem somewhat doubtful, still, in view of the fact that surrogates now possess as great powers on the account- ing of trustees as of executors, it appears to be analogous in principle to the cases of *In re* Faulkner, 7 Hill, 181; Farrell's Estate, 1 Tuck. 110. If, therefore, claims exist in his favor, or against him, for any dealings with the estate prior to June 6, 1890, and subsequent to January 29, 1890, redress may properly be sought here.

The credit for "fee paid to T. Chesley Richardson, as trustee, $100," presumably on account of his commissions, is disallowed, as it is well settled that the commissions cannot be taken prior to the accounting.

The items of credit claimed for payment of services of book-keepers should be, and are, disallowed. Doubtless the gentle-men who rendered the services were abundantly competent experts, and were entitled to be adequately rewarded; but as a rule an executor should keep his own accounts, when they are as simple as they should have been in this instance, if the executor had not rendered them more complex by his unwarranted dealing with the fund, and, if he cannot, then he should pay for the work belonging to him to do, out of his own pocket.

The addendum to the report or award of the referee or arbitrator, having been made subsequent to its submission, must be discharged.

With the exception of the criticisms and their results, as above outlined, the account is approved, and a decree will be prepared accordingly.